**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MILAD MALEKI ROSTAMGHESHLAGI,

      Petitioner,

v.                                         No. 1:26-cv-02203-MLG-JFR

Warden, Torrance County Detention Center;
Mary De Anda-Ybarra, Acting Field Office
Director, El Paso Field Office, U.S.
Immigration & Customs Enforcement;
David J. Venturella, Acting Director, U.S.
Immigration and Customs Enforcement;
Markwayne Mullin, in his official capacity
as Secretary of the Department of Homeland
Security; Todd Blanche, in his official capacity
as Attorney General of the United States;
Department of Homeland Security (DHS); and
Executive Office for Immigration Review (EOIR),

      Respondents.

**ORDER DIRECTING RESPONDENTS TO
<u>IMMEDIATELY RELEASE PETITIONER</u>**

Fleeing a death sentence for his political opposition to the Iranian government, Petitioner

Milad Maleki Rostamgheshlaghi arrived in the United States on January 19, 2025, seeking asylum.

Doc. 1 at 1-5. Federal immigration authorities detained him that same day and he has remained in

their custody ever since. *Id.* at 4-5; Doc. 5 at 1. Maleki Rostamgheshlaghi's petition for writ of

habeas corpus ("Petition") challenges his prolonged detention and seeks his immediate release.

Doc. 1. He also requests a declaration that his asylum claim must be reevaluated. Doc. 1 at 13. For

the reasons stated herein, the Court grants the Petition to the extent Respondents are ordered to

release Maleki Rostamgheshlaghi from their custody within twenty-four hours of this Order's

filing.

1

**FACTUAL BACKGROUND**

Federal immigration authorities placed Maleki Rostamgheshlaghi in removal proceedings shortly after he arrived in the United States. Doc. 1 at 5. Maleki Rostamgheshlaghi timely applied for asylum on April 16, 2025. *Id.* An immigration judge ("IJ") ordered his removal on August 13, 2025, but granted withholding of removal to Iran. *Id.*; Doc. 5-1 at 2. The parties agree that the removal order became administratively final on August 13, 2025. Doc. 1 at 2; Doc. 5 at 2.

Immigration and Customs Enforcement and Removal Operations ("ICE ERO") began the process of deporting Maleki Rostamgheshlaghi in October 2025 by inquiring into whether Costa Rica or Panama would accept him. Doc. 5-1 at 2. By the end of that month, both countries denied him third-country entry. *Id.* Four months later, ICE ERO requested that Turkey accept Maleki Rostamgheshlaghi, but Turkey similarly declined. *Id.* Hannah Patrick, a Deportation Officer at the U.S. Department of Homeland Security ("DHS"), provided a declaration ("Patrick Declaration") stating that Maleki Rostamgheshlaghi's passport is no longer valid because it has expired. *Id.* at 3. ICE ERO is awaiting guidance on whether to initiate a travel document request from Iran. *Id.* Since sending their third-country entry request to Turkey in February 2026, the Patrick Declaration indicates that ICE ERO has not taken any other action in Maleki Rostamgheshlaghi's case aside from serving him with several warnings for failure to depart. *Id.* at 2-3. According to the Patrick Declaration, "[t]he anticipated timeline to remove Petitioner is currently unknown." *Id.* at 3.

**LEGAL BACKGROUND**

Once a noncitizen's[1] order of removal becomes administratively final,[2] they must be detained during the following ninety days, which is known as the removal period. *See* 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A). If a noncitizen does not leave or is not removed during this time, § 1231(a)(3) contemplates that they will be released "pending removal . . . subject to supervision under regulations prescribed by the Attorney General." Section 1231(a)(6) allows for the continued detention of certain noncitizens beyond the ninety-day removal period. Section 1231(a)(6) "does not permit indefinite detention," though, and is instead limited to a "period reasonably necessary to bring about that [noncitizen's] removal from the United States." *See* *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Under *Zadvydas*, six months of detention is considered "presumptively reasonable." *Id.* at 701.

Following the presumptively reasonable six-month period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Satisfying this standard does not require that a petitioner "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702. "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. at 701.

---

[1] "This [order] uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

[2] Several circumstances can trigger finality, including the "expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]" 8 C.F.R. § 1241.1.

When evaluating a noncitizen's challenge to their continued detention under § 1231(a)(6), the Court must consider "whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. To that end, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If removal is not reasonably foreseeable, however, "the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. "In that case, . . . the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

## DISCUSSION

Maleki Rostamgheshlaghi's Petition requests immediate release from immigration detention on the basis that his removal is not likely to occur in the reasonably foreseeable future.[3] Doc. 1 at 9-12. The Court ordered the United States Attorney's Office for the District of New Mexico ("USAO") to respond to the Petition on behalf of Federal Respondents[4] within ten business days. *See* Doc. 4. The USAO timely responded, asserting that "Respondents are confident they will be able to remove Petitioner soon" and attaching the Patrick Declaration to illustrate Federal Respondents' removal "efforts to date." Doc. 5 at 4.

---

[3] Federal courts have jurisdiction under 28 U.S.C. § 2241 to hear detention challenges like the one presented here. *See Zadvydas*, 533 U.S. at 687-88 (concluding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (providing that "[c]hallenges to immigration detention are properly brought directly through habeas").

[4] The Court uses "Federal Respondents" to refer to all Respondents in this matter other than the Warden of the Torrance County Detention Center.

**I.        Maleki Rostamgheshlaghi's Continued Detention Is Not Authorized by § 1231(a)(6)**

Courts are split on whether *Zadvydas*'s presumptively reasonable six-month period of detention begins at the same time as the removal period.[5] But because Federal Respondents do not challenge Maleki Rostamgheshlaghi's assertion that the periods run concurrently, the Court proceeds under that interpretation for the purposes of this opinion. *See* Doc. 1 at 8 ("*Zadvydas* decided that detention for 180 days after a final order of removal, including the 90-day removal period, is presumptively reasonable under the INA and Due Process Clause."). The parties agree that Maleki Rostamgheshlaghi's removal order became administratively final on August 13, 2025. Doc. 1 at 2; Doc. 5 at 2. Accordingly, the removal period and presumptively reasonable six-month period of detention began that same day, and the six-month period ended on February 9, 2026.

Maleki Rostamgheshlaghi has demonstrated good reason to believe his removal is unlikely in the reasonably foreseeable future. He argues that his order withholding removal to Iran prevents his deportation there, and Federal Respondents have not been able to identify a third country willing to accept him in the past eleven-and-a-half months. Doc. 1 at 9, 11; Doc. 6 at 2-3. It is widely recognized that an order withholding removal to a non-citizen's home country makes their deportation to any country significantly less likely. *See, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (acknowledging that "alternative-country removal is rare"); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025) (observing that a noncitizen's receipt of an order withholding removal "substantially increases the difficulty of removing" the individual).

---

[5] The Court recently noted that it is not clear whether the *Zadvydas* Court intended the presumptively reasonable six-month period to include the ninety-day removal period. *Bejarbaneh v. Mullin*, No. 1:26-CV-01451-MLG-GJF, 2026 WL 1724942, at *2 n.4 (D.N.M. June 12, 2026). As in *Bejarbaneh*, though, resolution of this ambiguity is unnecessary for the disposition of this case because under either interpretation, Maleki Rostamgheshlaghi's detention has exceeded the presumptively reasonable six-month period.

Additionally, the expiration of Maleki Rostamgheshlaghi's passport will further delay his removal because Federal Respondents apparently need to obtain new travel documents for him from Iran, a country that is currently at war with the United States.[6] Doc. 1 at 10; Doc. 5-1 at 3. Even if Federal Respondents were to immediately request travel documents, that would "not establish that removal is significantly likely to occur in the reasonably foreseeable future" because "[t]ravel document requests can be denied, ignored, or processed in the distant future." *Shaw v. ICE*, No. 6:26-CV-00587, 2026 WL 1717260, at *2 (W.D. La. May 21, 2026), *report and recommendation adopted*, No. CV 26-0587, 2026 WL 1718649 (W.D. La. June 12, 2026).

In their Response, Federal Respondents state that they "are confident they will be able to remove Petitioner soon" but provide no legal argument or factual basis to support this assertion. Doc. 5 at 4. Federal Respondents acknowledge that the Patrick Declaration only details their removal "efforts to date." Doc. 5 at 4. To summarize those efforts: in the past eleven-and-a-half months, Federal Respondents have made a total of three requests for foreign governments to accept Maleki Rostamgheshlaghi. Doc. 5-1 at 2-3. These requests were quickly and uniformly denied. *Id.* No meaningful action has been taken since February 20th of this year, when Federal Respondents submitted their request to Turkey. *Id.* at 2. And even though Maleki Rostamgheshlaghi's passport has expired, Federal Respondents have not yet requested new travel documents for him from Iran. *Id.* at 3. Federal Respondents admit that "[t]he anticipated timeline to remove Petitioner is currently unknown." *Id.* at 3. Accordingly, the Patrick Declaration does not provide any indication that Maleki Rostamgheshlaghi will be removed, much less that he will be removed in the

---

[6] The Court takes judicial notice of the ongoing conflict between the United States and Iran. *See* Qasim Nauman & Euan Ward, *Iran Says It Targeted U.S. Military in Kuwait With Drones*, N.Y. Times (July 31, 2026), https://www.nytimes.com/2026/07/31/world/middleeast/iran-us-military-kuwait-drone-attack.html; *see generally* Britannica Editors, "2026 Iran war," *Encyclopedia Britannica*, https://www.britannica.com/event/2026-Iran-war (last modified July 30, 2026).

reasonably foreseeable future. *See Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019) ("[I]f DHS has no idea of when it might reasonably expect Singh to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future."), *abrogated on other grounds by Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579 (W.D.N.Y. 2025). On this record, the Court is left "guess[ing] whether [Maleki Rostamgheshlaghi's] deportation might occur in ten days, ten months, or ten years." *Singh*, 362 F. Supp. 3d at 102. That is woefully inadequate given that Maleki Rostamgheshlaghi's post-removal-order detention is just shy of twelve months in length—nearly double that which is presumptively reasonable under *Zadvydas*.

Tellingly, Federal Respondents do not attempt to argue that their "efforts to date" are sufficient to meet their burden to rebut Maleki Rostamgheshlaghi's showing under *Zadvydas*. *See* Doc. 5. The Court interprets Federal Respondents' lack of argument and failure to present any evidence that supports their position as a concession that Maleki Rostamgheshlaghi's continued detention is not authorized by § 1231(a)(6). *See, e.g.*, *Grelle v. Off. of Pers. Mgmt.*, No. CIV 25-0189 JB/KRS, 2026 WL 867709, at *12 n.4 (D.N.M. Mar. 30, 2026) (explaining that "[i]mplicit in [D.N.M.LR-Civ 7.1(b)] is that the failure to respond to an argument in a motion constitutes consent to grant the motion to the extent of that particular argument"); *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (quoting *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)).

Federal Respondents have failed to rebut Maleki Rostamgheshlaghi's showing that there "is no significant likelihood of removal in the reasonably foreseeable future" and have otherwise

waived their arguments in opposition to issuance of the writ. *Zadvydas*, 533 U.S. at 701. Accordingly, the Court holds that Maleki Rostamgheshlaghi's continued detention is no longer authorized by § 1231(a)(6). *See Zadvydas*, 533 U.S. at 699. He is therefore entitled to immediate release, subject to reasonable conditions of supervision. *See* § 1231(a)(3); 8 C.F.R. § 241.4(j). Maleki Rostamgheshlaghi may be re-detained if his removal becomes reasonably foreseeable, i.e., Federal Respondents receive new travel documents for him and make arrangements to deport him.[7] *See* 8 C.F.R. § 241.4(l)(2)(iii).

## II.     The Court Denies Maleki Rostamgheshlaghi's Asylum Claim Request

Maleki Rostamgheshlaghi briefly argues that he is entitled to have an IJ reconsider his asylum claim "because of the now-vacated Circumvention of Lawful Pathways rule." Doc. 1 at 11-12. He therefore requests that the Court "[d]eclare that, in line with *East Bay Sanctuary Covenant v. Trump*, Petitioner's case must be reconsidered." *Id.* at 13. Maleki Rostamgheshlaghi's argument is cursory: it is only three sentences long, he fails to include a citation for *East Bay Sanctuary Covenant v. Trump*, and he does not explain why he "is constitutionally entitled to the reevaluation of his asylum claim." *See id.* at 11-12. The Response does not address the matter and the Reply does not elaborate. This briefing and record are inadequately developed for the Court to assess the merits of Maleki Rostamgheshlaghi's request. It is therefore denied.

**CONCLUSION**

The Court therefore partially grants the Petition, and orders the following:

---

[7] His release also may be revoked for any of the other reasons listed in 8 C.F.R. § 241.4(2). Any revocation of Maleki Rostamgheshlaghi's release must comply with 8 C.F.R. § 241.4(l).

1.  Respondents must immediately release (no later than twenty-four hours from this Order's filing) Maleki Rostamgheshlaghi from custody, subject to reasonable conditions of supervision.

2.  Upon his release, Respondents must return all of his property, including any identification documentation that was in his possession when he was detained. Respondents must also promptly inform Maleki Rostamgheshlaghi's counsel of when and where he will be released.

3.  Respondents must file a status report within three business days of this Order's filing to certify their compliance. The status report shall state when and where Maleki Rostamgheshlaghi was released.

4.  Maleki Rostamgheshlaghi shall promptly report to the Court any failure on Respondents' part to comply with this Order.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA